Court. May it please the court, Chief Judge Batchelder. At this time, my appellant respectfully requests five minutes of time for rebuttal. My name is Jonathan Taylor and I represent the plaintiff for the appellant Diane Mariello, who respectfully requests this court reverse the district court's grant of summary judgment to defendant Great American E and S Insurance Company and remand this matter for further discovery and trial. There are six brief facts that are crucial to this court's resolution of this case. First, on June 15, 2007, plaintiff initiated a case in the U.S. District Court for the Eastern District of Tennessee against the Villages of Norris Lake and Land Resources Companies, LLC. Second, before trial in that case, the defendants filed bankruptcy in the Middle District of Florida, and the plaintiff's case was thereafter stayed in the Eastern District. Third, plaintiff hired Florida Council in Florida to file a motion for relief from that stay. The trustee immediately objected from that motion for the relief from the automatic stay. In resolving the dispute, the bankruptcy court allowed the plaintiff to proceed in program only and denied the plaintiff from proceeding in personam. And the stay in the Eastern District was thereafter lifted to pursue insurance and whether there was actual insurance involved in the land resources. What's wrong with that? I mean, you're going after the insurance now. The bankruptcy court allowed you to proceed with your action to the extent that it was covered by insurance. Why didn't you do that? Why didn't you proceed with your action rather than file this new action directly against the insurance company? Well, we were only allowed to proceed in RAM. You were allowed to proceed to the extent that there was insurance coverage, which is all you're asking for here anyway, I think. That's correct. So what is the problem? What was the problem with the order granting your motion to lift the stay? Well, proceeding against the defendants, the villages of Norris Lake and land resources in that original action would, of course, have brought an objection and potentially subjected Ms. Moriello to sanctions for violating the stay. Oh, not if the court lifted the stay to the extent that it was covered by insurance. Right. See, I think exactly what you want is what the bankruptcy court granted you, and I just don't see why you didn't proceed. That's all. Well, we didn't proceed because we didn't think we could. Why not? Putting ourselves... What in this order don't you understand? Well, I don't understand, at least from Ms. Moriello's position, what she could do to continue with that action. You could continue the action to the extent that there's insurance coverage. Right. And we did discover that there was insurance coverage, and then that... The only way you can get the insurance coverage is to proceed to judgment, which is what the stay was lifted to permit you to do. Once you had a judgment, then you would have something to demand that the insurance company actually pay out on. But when you didn't proceed to a judgment... I mean, why didn't you proceed to a judgment? Well, the concern there was violating the automatic stay. Which had been lifted. Well, only to pursue, at least in rem, and I don't believe that, at least based on black laws or black's dictionary with regard to in rem, that it would have allowed us to proceed in that case, in the original action. In rem, at least by black's law dictionary, is... Let me ask you another question. Did the order... And I don't have it in front of me, so I don't remember. Did the order... Oh, great. Thank you. Perhaps I won't have to ask you the question. Your Honor, this is a... At least with regard to the cases. I mean, we readily acknowledge that the law says what it says with regard to direct actions in the state of Tennessee, prevents direct actions against insurance companies. That much we acknowledge. The concern here is the windfall, allowing the defendant, and precisely N. Ray Morris, which was a western district, Tennessee bankruptcy decision. It's stated in a footnote that, quote, if a question regarding the sufficiency of the insurance coverage arises, or debtor were required to pay the cost of his defense, the continuation of lawsuit against the debtor might be prohibited. And what we have, at least based on this insurance policy at issue, is section one, which states that the company shall pay on behalf of the insured those sums in excess of the self-insured retention and up to limits of liability stated in the declarations. The policy, there is a self-insured retention. And proceeding against the debtor would, of course, at least we'd run into objections based on the cost of defense, based on proceeding against that debtor, based on this self-insured retention that the policy contemplated and required. So the debtor then would be forced to, at least under this policy, to come up with money to defend this action. And at least based on Morris, and in that case, Morris, where they cite to, and where I just quoted from, is also quoted by, or at least referenced, the Edgeworth Fifth Circuit opinion in which they said, you know, this is precisely the type of situation you end up with, a windfall for the insurance company when their insured runs into some sort of financial difficulties. That's what happened in this case. The case proceeded at least almost to trial. Significant expense was incurred by the parties to defend this original action, both from the insured in this case, as well as Ms. Morriello. And on the eve, or at least a few months before trial, then we get this suggestion of bankruptcy. Then we, you know, Mrs. Morriello's left to do nothing at that point without at least spending the money to hire Florida Council to lift the stay, which she did. She attempted to pursue her case, at least with regard to Great American's position in this case. And again, as the District Court noted, there is at least genuine issues of material fact with regard to notice in this case. Mr. Martin, who was the defendant's representative in this case, stated very clearly that in an affidavit that they had no notice of Ms. Morriello's claim. Well, when I took Mr. Martin's deposition, he acknowledged that they had received at least quasi-notice from the insured in an application for renewal in December of 2007. He stated that to provide coverage, they had to receive notice before the expiration of the insurance contract, which would have been April of 2008. They had it. They at least had notice of that lawsuit prior to that date. Mr. Martin acknowledged that. It was included in a summary of pending litigations. And what did the insurance company do in this situation? Nothing. They took that information and did nothing with it. They didn't ask the insured anything about those, that litigation. They simply did nothing. And they didn't want to ask any questions. But they did use it for one reason. They used it to non-renew land resources in this case. That's what Mr. Martin testified. That was the reason that they considered land resources a, quote, bad insured. And that was the sole basis for the rejection of the application for renewal. At least in this case, I don't know what else Ms. Morriello could have done. That's our position. We readily acknowledge that the cases that have been quoted by defendants counsel in the district court and in this court, that at least in Tennessee, it's not a direct action state. The way around that at least is with regard to the N. Ray Morris and the fact that there was, at least contemplated in this policy, a requirement for the insured to at least fund the cost of his defense or its defense. And for that reason, we believe that this is a case that should be allowed, at least based on the public policy in Tennessee. And again, there is at least the Ferguson v. Nationwide property and casualty case in the Tennessee Court of Appeals 2006 that says very clearly, to quote, while Tennessee has not directly addressed the question of the rights of one claiming to be a third-party beneficiary to an insurance contract who has never been granted a judgment against the insured, Tennessee has not at least made a decision based on that. So we think that this court at least should make a decision and should allow Ms. Morriello to continue with discovery and continue with the trial. And for those reasons, we'll rest at least for the time being. Thank you. Thank you, Counsel. Good afternoon. May it please the Court, I'm Mike Neal. I represent Great American Insurance Company. And they want to make a public policy argument that flies in the face of Tennessee law and would upend the rights of the insurance company and the insured to control litigation. Diane Morriello, there's exhibits in Mr. Martin's deposition, which Mr. Taylor produced, where they were negotiating and had a claim pending in 2005. They didn't file suit until 2007, and then they controlled the defense from the time it was filed until they found that they were bankrupt. And then they elected not to proceed and get relief from the automatic stay and reduce that, liquidate that judgment, so to speak. They could have done that, and they waived that. And now I think they're embarrassed that they didn't. Their explanation for why they did not do that is in their brief, and it makes no sense whatever. So here we are with the magistrate judge, found the nut of the coconut. He says there's no issue about claim made in this case. They raised, you'd think that was their argument, that's the issue they raised, and then when you read their reply brief, that's all they talk about. We got a claim made issue, and we've got an even prejudice issue in the rebuttal brief, and none of that's an issue, because the magistrate judge ruled very specifically that there was no issue about claimed notice. He ruled that out, and he found there was no judgment, and they had not reduced the things under the policy. They're trying to get more insurance than the insured had. So I don't think there's anything that we need to address here in the magistrate guidance ruling and affirming. Thank you. Thank you, counsel. May it please the court. Just to follow up just briefly, again, I did at least refer to the Black's Law Dictionary with regard to NREM, and again, Black's Law defines NREM as a technical term used to designate proceedings or actions instituted against the thing in contradiction to personal actions, which are said to be in personam. Again, I just don't see how at least based on that court's order granting the relief to the stay, to lift the stay at least, would allow Mrs. Moriello in this case to proceed in that case with anything more than just allowing her to discover insurance, and then taking that information and turning it around and then filing a separate suit. Precisely, the objection would have been raised at least by the defendants in that case, the trustee in that bankruptcy. I mean, again, the bankruptcy trustee is trying to control the estate at that point. They are continuing to spend money to fund a defense and litigation that Mrs. Moriello had instituted. What is the decision? What is her choice at that point? She has at least done everything she could to try to proceed with regard to her remedies. She did retain a lawyer to lift the stay. She did at least attempt to follow up and diligently search for insurance contracts or the existence of an insurance contract. Then she took that information, utilized that in filing this lawsuit here. Based on that, without any further questions from the court, I'll rest on the brief and request that this court at least respectfully reverse the Eastern District's grant of summary judgment in this case. Thank you so much for your time. Thank you, counsel. The case will be submitted.